PEOPLE ex rel. O'SHAUGHNESSY v. ROOSEVELT et al.

(Supreme Court, Appellate Division, First Department. November 12, 1897.)

DISCHARGE OF POLICEMAN.

Although, where an officer is shown to have violated the regulations of the police department, his excuse is a matter solely for the commissioners to determine, yet, if he has been discharged upon evidence which does not justify a finding that he has violated them, the proceedings must be annulled upon certiorari, and the relator reinstated.

Certiorari by the people, on the relation of William O'Shaughnessy, to review the action of Theodore Roosevelt and others, board of police commissioners of the city of New York, in dismissing relator from the police force. Relator reinstated.

Argued before VAN BRUNT, P. J., and RUMSEY, WILLIAMS, and INGRAHAM, JJ.

Louis J. Grant, for relator.

Terence Farley, for respondents.

INGRAHAM, J. The relator, a patrolman of the police force of the city of New York, was charged with conduct unbecoming an officer; the specification being that the said relator "was so much under the influence of intoxicating liquor as to be unfit for duty in the 18th precinct station house at 1:45 p. m., July 4, 1896, during his tour of patrol duty." Rule 193 of the police force provides that any member of the police force may be dismissed from the office on conviction of intoxication, or of conduct unbecoming an officer. The only question before us is whether there was any evidence before the police commissioners that tended to sustain this charge. The police surgeon testified that when he saw the relator in the station house he was "recovering from the effects of alcohol, and seemed slightly unsteady. His speech was thickened, and he admitted that he had been drinking." The doctor further testified that when he saw him he was not fit to go on post. Upon cross-examination the surgeon testified that the conditions which he observed were those that would naturally

exist where a man had taken one or two medical doses of liquor two or three hours before, upon an empty stomach, and where the subject was a person not accustomed to the use of liquor, and also that the natural result of an attack of dysentery or diarrhea is to produce prostration, and that after such an attack his gait would be unsteady from weakness. It appeared from the testimony, without contradiction, that the relator, at 1 o'clock, when he left the station house to go on duty, had no appearance of being intoxicated. It further appeared that the officer that he relieved saw him between 1:15 and 1:20 of that day upon his post at the usual relieving place; that there was no sign of intoxication at that time, but that the relator complained of feeling sick; that he had been sick nearly all night with diarrhea; and that he looked very pale. A switchman at Twenty-Third street and Fourth avenue testified that the relator was, between 1 and half past 1, on his post, doing his duty; that he looked "kind of sick, weary, or tired-like," and "complained of being sick, up all night, and having diarrhea, and eating nothing for dinner," but that he at that time showed no signs of intoxication. The roundsman who saw him on his post, and took him to the station house, before he was seen by the doctor, said that he staggered slightly, and that his speech was a little thick. The relator answered all the questions of the roundsman promptly, and the only evidence from which they could judge was that he staggered a little when he walked. When he came back to the station house he complained to the sergeant at the deck that he did not feel well; that he had dysentery. The sergeant, however, saw nothing in his conversation or manner which indicated that he was, or had been, intoxicated. The sergeant testified that he appeared to be sick, looked pale, and was a little nervous. When the captain came into the station house, he saw the relator, but could not detect that anything was the matter with him; that he was then fit to go on post, and the captain sent him back to his post. That was about 3:55 p. m. The relator called a practicing physician, who testified that he saw the relator on the 4th of July; that some time before noon the relator called upon him professionally, told him that he had been suffering from dysentery or diarrhea, had not been able to eat anything, asked the physician's advice before going on his post, and asked for something to help him; that the physician told him to take some milk punches; that the effect of these milk punches might become noticeable within a half hour, or that it might take two hours; that, in the physician's opinion, if a person, after taking these milk punches, had stayed in the house, he would have been all right, but that, in the condition in which he saw the relator, to go in the beating sun of a hot day, and the man already tired, it might produce an unfavorable effect upon him,—he would be weak from it, with the eyes more or less watery, the limbs more or less unsteady; and that sometimes it would cause dizziness. The physician further testified that:

"The weather, and the man being in an enemic condition; there being congestion or compression of the brain, a gastric disorder or fermentation,—certainly a man will not be so well able to answer his questions as if he were not suffering."

The relator testified: That he had been sick all night and the day before, from dysentery. That he got up about half past 11, dressed, and went home; thought he would go home and eat something, as he did not want to report sick. That he felt lightheaded, with a sort of rambling before his eyes. That he went and spoke to the doctor. Told the doctor that he did not feel well, had been up all night with dysentery, and had had no sleep, and asked the doctor to give him something. That the doctor told him to go down and take a milk punch, and put an egg in it, which he did. That he lay down on the sofa about twenty minutes, got up and had another milk punch, with an egg in it, made for him by his mother. That at 1 o'clock he was at the station house with the rest of the men, stood in line, and answered to his name. Did not feel at all intoxicated at that time, but simply felt weak. That he went out with the rest of the men, and took a car down Broadway, and got off at Twenty-Third street, met his relief, and stood talking on the corner of Twenty-Third street and Fourth avenue. That he stood talking with the officer and the switchman. Walked up the avenue to make a trip over his post, feeling very weak, but he seemed to get better as he went along. Went as far as Twenty-Seventh street, taking the side streets to Madison avenue. That he there met the roundsman who had been sent for him. That he then felt sick and weak from his disease, but no worse than he had felt before he left the station house, except that he felt a dizziness in his head. That he stood in the shade, thinking that the sun had affected him, and he had not been standing 10 minutes when the roundsman came and told him that he was wanted at the Eighteenth precinct station house.

Now, taking this testimony together, we do not think that there was sufficient evidence to justify a conviction of intoxication. The only evidence as to the relator's taking any intoxicants at all is his own statement that he took two milk punches. This he took, upon the advice of his doctor, as medicine; and all the symptoms that were noticed by the surgeon or the other officers could with as much reason be attributed to the disease, and to walking in the hot sun in his then condition, as to the effect of the milk punches which he had taken. There was no evidence to show that the relator was in the habit of drinking. On the contrary, the testimony is that he was a sober man. This was the first charge that he had had preferred against him for intoxication, and the officer's whole trouble seems to have been occasioned by his reluctance to report that he was sick, and his endeavor to perform his duty when his physical condition was such that he should have kept quiet. We fully recognize the rule that, where an officer is shown to have violated the regulations of the police department, his excuse is a matter solely for the commissioners to determine, and with its sufficiency we have nothing to do; but in this case, where all of the symptoms from which intoxication could be inferred could have been caused by a disease from which the undisputed evidence shows the relator was then suffering, and where it appears that all the liquor that the relator took was that prescribed for him by his physician as medicine for the disease, and that the amount was so small that it could hardly have intoxicated a healthy

person, we do not think that the evidence justifies a finding that the relator was intoxicated, or unfit for police duty from the influence of intoxicating liquor. We think, therefore, that the proceedings of the respondents must be annulled, and the relator reinstated, with $50 costs and disbursements of this application. All concur.